(113 So. 535)

### HEFLIN v. HEFLIN. (6 Div. 745.)

Supreme Court of Alabama.  March 31, 1927.

Rehearing Denied June 30, 1927.

**1. Appeal and error ⬤⟿931(1)—Evidence taken by depositions in suit to declare resulting trust in realty is to be considered without presumption in favor of decree (Code 1923, § 10276.)**

Evidence taken by depositions in suit to declare resulting trust in real property, conveyed to defendant as sole owner, is to be considered without presumption in favor of the trial court's decree, under Code 1923, § 10276, providing that in chancery cases no weight shall be given to the decision of the circuit judge.

**2. Trusts ⬤⟿86—Fact of conveyance to defendant raised presumption that conveyance spoke truth, in suit to declare resulting trust.**

In a suit to declare a resulting trust in real property in favor of one who asserted he had contributed to the purchase price, the fact that conveyance was made to defendant raised a presumption that the conveyance spoke the truth.

**3. Trusts ⬤⟿86—Burden of proof to overcome presumption that conveyance to one as sole owner spoke truth was on complainant seeking to establish resulting trust.**

The burden of proof to overcome the presumption that a conveyance to one as sole owner spoke the truth rested upon complainant in a suit to establish a resulting trust in the property.

**4. Trusts ⬤⟿89(5)—Proof to establish resulting trust in property conveyed to defendant must be clear, convincing, and satisfactory.**

The proof, in a suit to establish a resulting trust in real property, conveyed to defendant as sole grantee, must correspond with the pleadings, and must be clear, full, satisfactory, and convincing.

**5. Trusts ⬤⟿89(2)—Evidence held to show that complainant contributed to purchase price of real property conveyed to defendant, entitling complainant to be adjudged co-owner.**

Evidence held to show that complainant contributed portion of the purchase price of real property to his brother, in whose name the conveyance was taken, entitling complainant to be adjudged co-owner thereof.

**6. Courts ⬤⟿106—Supreme Court is not required to make detailed analysis of evidence in reversing judgment in suit to declare resulting trust (Acts 1915, p. 594.)**

Supreme Court would not, on reversing decree, enter into a detailed discussion of evidence in an equity suit to establish a resulting trust in real property, under Acts 1915, p. 594, providing the justices shall not be required to write opinions where the decisions relate to questions of fact only.

**7. Courts ⬤⟿106—Rule that discussion of evidence by appellate court is generally unprofitable applies particularly to litigation between brothers.**

The principle that protracted discussions of evidence by an appellate court are usually unprofitable is particularly applicable to litigation between two brothers, whereby one seeks to have declared a resulting trust in property conveyed to the other.

**8. Evidence ⬤⟿265(1)—Rule that verbal admissions or declarations of party in interest are to be received with caution is based on frailty of human memory.**

Rule that verbal admissions or declarations of a party in interest should be received with great caution is based largely on the frailty of human memory, since such statements are easily misunderstood and difficult accurately to reproduce.

**9. Trusts ⬤⟿89(4)—Brothers' testimony of declarations and admissions of parties in interest held entitled to special consideration, where made not casually but under impressive circumstances.**

In suit to establish resulting trust in real property, testimony of complainant's brothers as to admissions and declarations of parties in interest held entitled to special consideration, where the statements were made, not casually, but under circumstances tending to impress the minds of the witnesses.

**10. Equity ⬤⟿66—Complainant's offer to do equity was properly confined to matters relating to subject-matter of suit.**

In a suit to establish resulting trust in real property conveyed to defendant, complainant's offer to do equity was properly confined to matters arising out of and relating to the subject-matter of the suit.

**11. Appeal and error ⬤⟿1119—Trial court's dismissal of cross-bill, not appealed from, held without prejudice to refiling, after reversal of judgment dismissing the complaint.**

Trial court's dismissal of cross-bill to a complaint to establish trust in real property held without prejudice to its reinterposition, where on appeal the lower court's judgment dismissing the complaint was reversed and judgment rendered for complainant.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill in equity by Harrington P. Heflin against Wyatt Heflin. From a decree dismissing the bill, complainant appeals. Reversed, rendered, and remanded.

Henry Upson Sims and McClellan, Rice & Stone, all of Birmingham, for appellant.

If the complainant advanced half the purchase money in the character of a purchaser,

there is a resulting trust in his favor. Heflin v. Heflin, 208 Ala. 69, 93 So. 719; 1 Perry on Trusts (5th Ed.) 133; Milner v. Stanford, 102 Ala. 277, 14 So. 644. Pleas of laches and adverse possession are not proven. Long v. King, 117 Ala. 423, 23 So. 534. The cross-bill having been dismissed, the defendant is entitled to only such relief as may be given under complainant's offer to do equity in his original bill, which is an accounting. Grand Bay L. Co. v. Simpson, 205 Ala. 347, 87 So. 186; Ashe-Carson Co. v. Bonifay, 147 Ala. 376, 41 So. 816.

Rudulph & Smith, of Birmingham, for appellee.

Mere parol agreements or parol declarations of the purchaser that he is buying for another or that the purchase is intended for the benefit of another, without the employment of the money of another, will not create a resulting trust. Lehman v. Lewis, 62 Ala. 129; Patton v. Beecher, 62 Ala. 579. It is not required that an ancient transaction be as clearly proved as one of recent occurrence. Smith v. Wert, 64 Ala. 34. The presumption arises from a deed conveying land that it fully speaks the truth; and the burden of proof is upon him who asserts the contrary. Fowler v. Fowler, 205 Ala. 514, 88 So. 648. A mere general and small contribution toward the payment of purchase money is not sufficient to create a resulting trust. Bibb v. Hunter, 79 Ala. 351; Harton v. Amason, 195 Ala. 594, 71 So. 180. The appellant's case is barred by laches. Gayle v. Pennington, 185 Ala. 53, 64 So. 572; Meeks v. Miller, 214 Ala. 684, 108 So. 864.

GARDNER, J. The bill in this cause was filed by appellant against appellee to declare a resulting trust in a one-half interest in certain lands situated in Jefferson county. The sufficiency of the bill was determined on former appeal from a decree overruling the demurrer interposed thereto. Heflin v. Heflin, 208 Ala. 69, 93 So. 719.

Defendant filed an answer and a cross-bill, and, upon submission of the cause for final decree on pleadings and proof, a decree was rendered denying complainant relief and dismissing the bill, and also dismissing defendant's cross-bill. From the decree, complainant has prosecuted this appeal. There was no cross-appeal or cross-assignment of error by defendant, and the question here for determination is the correctness of the decree denying relief to complainant and dismissing his original bill.

[1] The evidence is voluminous, and was taken by depositions, and not heard orally before the court. The cause is therefore here to be considered without the indulgence of any presumption in favor of the decree of the trial court. Section 10276, Code of 1923.

[2-4] From the conveyance to defendant, the presumption arises that it fully speaks the truth, and such presumption must prevail until the contrary is established beyond reasonable controversy. The burden of proof to overcome such presumption rests upon complainant. The proof must correspond with the pleadings, and must be clear, full, satisfactory, and convincing. Lehman v. Lewis, 62 Ala. 129; Fowler v. Fowler, 205 Ala. 514, 88 So. 648; Heflin v. Heflin, supra.

[5, 6] The question here for determination is one of fact. As previously noted, the evidence is voluminous, and to enter any detailed discussion would serve no useful purpose and extend this opinion to undue length, nor has such been the policy of this court since the passage of the Act of 1915, p. 594. Koger v. State, 110 So. 573.[1] "Protracted discussions of evidence, by an appellate court, are generally unnecessary and unprofitable, and should be avoided." Starke v. Blackwell, 36 Ala. 154.

[7] This is an unfortunate litigation between two brothers, and the foregoing observation is therefore here particularly applicable. A few general observations therefore as to the evidence, and our conclusion thereon, will suffice.

That the purchase of this property first originated with complainant, and that he carried on all negotiations in regard thereto with the vendor, is established without controversy. The relationship between these two brothers was intimate, living together during the years of their early struggles in their respective professions. The information gained was from complainant. The defendant admits that under the original agreement, as he understood it, complainant was to have a one-half interest in the property here involved, should he pay one-half of the purchase price.

Defendant, it seems, held the title to some other lots in Jefferson county purchased by complainant, afterwards conveyed by him to complainant. The explanation of complainant as to such character of purchase was that he himself was not careful as an investor or as a money-saving depositor, while his brother, the defendant, was, and that he thought this method would assist him in holding onto the property. The notes were signed by defendant, and, after a period of years and the final payment of the purchase-money notes, deed made to defendant. All of these negotiations were had by complainant with the seller, with whom he was well acquainted and on most friendly terms. That the seller understood that complainant and defendant were jointly interested as purchasers of this property is well established by the proof. The admission on defendant's part, that the original agreement contemplated a joint and equal interest in the property if complainant paid his part of the purchase price, must necessarily some-

[1] 215 Ala. 319.

what lessen the force and effect of the character of the transaction. Indeed, so far as concerns the establishment of the bill's averments, it reduces the principal issue to the ascertainment of one fact, as to whether or not complainant paid his portion of the purchase price. Upon this issue the testimony of complainant and respondent is in sharp conflict.

The testimony of complainant emphatically supports the allegations of his bill. Some of the purchase-money notes, marked "Satisfied," are in his possession and offered in evidence as exhibits to his testimony, and the fact that he paid interest on certain deferred payments out of his own funds is so clearly established as to require no discussion, if, indeed, it is controverted at all. But no comparison or analysis as to the testimony of these two brothers is here intended or will be made, though it may be said in passing, in view of its special mention by the trial court, that in our opinion entirely too much weight appears to have been given defendant's memorandum diary entry.

Complainant's insistence is strongly supported by the testimony of his three brothers, Dr. Howell T. Heflin, Rev. Walter W. Heflin, and Senator T. J. Heflin. These brothers testify that on various occasions, in discussing family affairs, defendant stated that he and complainant were equally interested in this property. Rev. Walter Heflin expresses it in the following manner:

"It was commonly known among all of the brothers that they owned this property jointly. I have heard Wyatt say often that H. P. was equally interested with him in the property. My information was gained from both of them, each agreeing that H. P. having paid the purchase money and being equal owners, and there has never been any question about it until recently."

[8] Dr. Howell Heflin also testified to like effect that he had heard defendant admit complainant's interest in the property several times. Senator Heflin also testified to several conversations with defendant in which complainant's equal interest was fully recognized. Much stress is laid upon the generally accepted rule to the effect that verbal admissions or declarations of a party in interest should be received with great caution. Rodgers v. Burt, 157 Ala. 91, 47 So. 226; Starke v. Blackwell, supra. The rule is based largely upon the frailty of human memory, the danger of mistake, or imperfection in repetition of the statements, or, as otherwise stated, such verbal statements are "easy to be misunderstood and difficult to be accurately reproduced," especially if the testimony is long after the event and without motive to impress the conversation upon the memory.

[9] But in the instant case we have more than casual conversations with defendant. These brothers were interested in each oth-

er's progress and held many family conferences where such matters were mentioned and discussed in a general way.

In 1914 defendant sold a portion of this property, without complainant's knowledge or consent for $40,000; $10,000 of which was paid in cash, and the remaining $30,000 secured by a mortgage on the property sold, executed by the purchaser. Complainant called these three brothers into conference with himself and defendant in regard to this property and his interest therein. They met and discussed the matter in Dr. Howell Heflin's office in Birmingham. Complainant stated his contention in reference to the purchase of this property, much in accordance with his testimony here. Defendant made no denial or statement to the contrary. Senator Heflin states that at this conference he asked defendant why he had sold the property without consulting complainant and without dividing the proceeds, and that defendant replied complainant "owed him a good deal, and that he was going to apply it on what H. P. owed him," to use the language of the witness. This witness further states:

"Wyatt agreed in that conference to divide the proceeds of the sale of the lands * * * with Harrington, and not to sell any more of the property without consulting Harrington and accounting to him for his half interest."

The testimony of the other two brothers is to like effect, and that defendant also agreed to let complainant have $5,000 of the cash purchase price paid, which soon thereafter he in fact did pay to complainant, taking his receipt therefor. Within less than a year before the bill in this case was filed, Senator Heflin had another conference with defendant in an effort to amicably adjust the matter between these two brothers and avoid litigation. There again was no denial of complainant's interest in the property, but there was objection to signing the instrument prepared by Senator Heflin admitting such interest, based upon complainant's indebtedness to defendant, and the further fact that, in the opinion of defendant, complainant would mortgage his interest, and he did not "want any mortgage on it." The witness stated, speaking of defendant in connection with this property:

"He stated a number of times in the presence of most of us, that they had bought together, and that each had paid for his part, or his half interest."

We have referred to these occasions as demonstrating that the statements and admissions of complainant's interest and of the payment of his part of the purchase price were not casually made, and were under such circumstances as to impress the minds of these three brothers, who testify so clearly and emphatically in relation thereto, and who appear to be without bias or prejudice or in-

terest. The rule as to such evidence being received with caution is a wholesome one and to be observed, but it was not intended to serve the purpose of brushing aside all such testimony. The impartial judicial mind searches for the truth, and, however much caution is exercised under the circumstances here very generally outlined, the testimony of these three brothers must be accorded its proper place in weighing and determining the issue of fact here presented. As stated at the outset, any detailed discussion of the evidence would not be here attempted, but only general observations in reference thereto.

The matters of defense, of adverse possession, statute of limitations, and laches are so clearly without sufficient support in the proof as to require no separate discussion.

The testimony has been read and studied with much care, and considered in the light of well-prepared briefs of counsel for the respective parties, and with due regard to the importance of our conclusion as affecting these litigants.

Upon due consideration we find our minds persuaded beyond reasonable controversy that the averments of the bill have been established in all material respects, and that complainant is entitled to the relief he seeks, establishing his title to one-half interest in the property here involved. Defendant has expended considerable sums in taxes and improvement assessments and other matters for which complainant must account and for which purpose an accounting will be necessary. Of course also upon such accounting defendant will account for any of the property sold and rents collected.

[10, 11] It appears that complainant became indebted to defendant for money loaned. These loans were made from time to time, embracing a considerable period, but the major portion of this indebtedness arose subsequent to the execution of the deed and formed no part of this original transaction, the subject-matter of this litigation. The offer of complainant in the bill to do equity is therefore properly confined to those matters arising out of, and relating to, the subject-matter of the suit. Volume 1, Pom. Eq. Jur. § 387. By way of answer and cross-bill, defendant set up this matter of indebtedness, and alleged that complainant's interest in the property, if mistaken in the averments that he had no interest, was pledged as security therefor. The cross-bill was dismissed, and nothing is here presented calling for any review or discussion of that ruling. Its dismissal, however, is without prejudice to its reinterposition upon remandment of the cause, and consideration thereof as the equities of the matter demand.

The decree is reversed, and one here rendered granting complainant the relief he seeks, and the cause will be remanded for fur-

ther proceedings therein to final disposition of the cause.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.

